| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Adam P. Thursby, Esq. (SBN 318465)<br>Kristin A. Zilberstein (SBN 200041)<br>Jennifer R. Bergh, Esq. (SBN 305219)<br>LAW OFFICES OF MICHELLE GHIDOTTI<br>1920 Old Tustin Ave.<br>Santa Ana, CA 92705<br>Ph: (949) 427-2010<br>Fax: (949) 427-2732<br>athursby@ghidottilaw.com | |
| ☐ *Movant appearing without an attorney*<br>☒ **Attorney for Movant** | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

</div>

| In re:<br><br>Eva Anderson<br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:17-bk-16372-NB<br>CHAPTER: 13 |
|---|---|
| | <div align="center">**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations)**<br>**(REAL PROPERTY)**</div> |
| | DATE: 11/27/2018<br>TIME: 10:00 a.m.<br>COURTROOM: 1545 |

| **Movant:** Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust V |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012     ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

<div align="center">

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

</div>

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  10/23/2018 

The Law Offices of Michelle Ghidotti
Printed name of law firm (if applicable)

 Kristin A. Zilberstein 
Printed name of individual Movant or attorney for Movant

 /s/ Kristin A. Zilberstein 
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 2                                    **F 4001-1.RFS.RP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 6520-22 Brynhurst Avenue
   *Unit/suite number*:
   *City, state, zip code*: Los Anngeles, CA 90043

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _1_ ):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☐ 11  ☐ 12  ☒ 13
   was filed on (*date*)  _5/23/17_ .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☒ A plan, if any, was confirmed on (*date*) _3/22/18_ .

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☐ Movant's interest in the Property is not adequately protected.

      (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☒ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☐ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 3                              F 4001-1.RFS.RP.MOTION

(3) ☒ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify):*

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit  5____.

d. ☐ Other:
    Deed of Trust as exhibit 1, Note as exhibit 2, all assignments as exhibit 3, payment history as exhibit 4, loan modification as exhibit 6

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014    Page 4    F 4001-1.RFS.RP.MOTION

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.  Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  __10/23/2018__

The Law Offices of Michelle Ghidotti
_____
Printed name of law firm (*if applicable*)
Kristin A. Zilberstein
_____
Printed name of individual Movant or attorney for Movant

/s/ Kristin A. Zilberstein
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 5                                    F 4001-1.RFS.RP.MOTION

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Ron McMahan _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☐ Other (*specify*): CEO of AMIP the operators of the Residential Credit Opportunities Trust V

2. a. ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 2____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 1____.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

   *Street address:*6520-22 Brynhurst Avenue
   *Unit/suite no.:*
   *City, state, zip code:*Los Angeles, CA 90042

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   Document number 05-3113322 Recorded in the Official Records of Los Angeles County

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                    Page 6                    F 4001-1.RFS.RP.MOTION

5.  Type of property (*check all applicable boxes*):

a. ☐ Debtor's principal residence         b. ☒ Other residence
c. ☒ Multi-unit residential               d. ☐ Commercial
e. ☐ Industrial                           f. ☐ Vacant land
g. ☐ Other (*specify*):

6.  Nature of the Debtor's interest in the Property:

a. ☐ Sole owner

b. ☒ Co-owner(s) (*specify*): Cara Eldridge owns 5% and Edmund Lincoln Anderson owns 33.33%

c. ☐ Lienholder (*specify*):

d. ☐ Other (*specify*):

e. ☐ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☒ trust deed.
    The deed was recorded on (*date*) 12/19/05      .

7.  Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
    that encumbers the Property.

a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 2      .

b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
    attached as Exhibit 1      .

c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
    trust to Movant is attached as Exhibit 3      .

8.  Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 257,862.71 |
| b. | Accrued interest: | $ | $ | $ 12,498.28 |
| c. | Late charges | $ | $ | $ 1669.40 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 1031 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[414.10          ] |
| g. | TOTAL CLAIM as of (*date*):    9/28/18 | $ | $ | $ 273061.39 |

h. ☐ Loan is all due and payable because it matured on (*date*) _____

9.  Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

a. Notice of default recorded on (*date*) _____ or ☐ none recorded.

b. Notice of sale recorded on (*date*) _____ or ☐ none recorded.

c. Foreclosure sale originally scheduled for (*date*) _____ or ☐ none scheduled.

d. Foreclosure sale currently scheduled for (*date*) _____ or ☐ none scheduled.

e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 7                          F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit 4____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

      An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $_____, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

      (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

      Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☐ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
      By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 8                          **F 4001-1.RFS.RP.MOTION**

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: 6/23/17_____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): 3/22/18_____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| 9 | | $ 2430.26 | $ 21,872.34 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                       $ 1669
   (*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                    $ 1031
   (*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                    $[ 414.10          ]

                    TOTAL POSTPETITION DELINQUENCY:                 $ 24158.64

g. Future payments due by time of anticipated hearing date (*if applicable*): 2_____.
   An additional payment of $ 2430.26_____ will come due on 10/1/18_____, and on
   the 1 day of each month thereafter. If the payment is not received by the 15 day of the month, a late
   charge of $5%_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

   $ 1913.24_____ received on (*date*) 3/29/18_____
   $ 1913.24_____ received on (*date*) 2/23/18_____
   $ 1913.24_____ received on (*date*) 1/20/18_____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
   A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
   13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 9                         F 4001-1.RFS.RP.MOTION

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (specify):


18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____  Case number: _____
         Date filed: _____  Date discharged: _____  Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not  granted.

      2. Case name: _____
         Chapter: _____  Case number: _____
         Date filed: _____  Date discharged: _____  Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not  granted.

      3. Case name: _____
         Chapter: _____  Case number: _____
         Date filed: _____  Date discharged: _____  Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not  granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 10                              F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____10-18-18_____          _____Ruy McMahon_____          _____
Date                        Printed name                    Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                        Page 11                        F 4001-1.RFS.RP.MOTION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1920 Old Tustin Ave.
Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __10/23/2018__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel: Andre A Khansari, andre@khansarilaw.com, legal@khansarilaw.com
Trustee: Kathy A. Dockery (TR), EFiling@LATrustee.com
U.S. Trustee: United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) __10/23/2018__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Eva Anderson, 1932 Rochester Circle, Los Angeles, CA 90018 (U.S. Mail)
Judge: Honorable Neil W. Bason, 255 E. Temple Street, Ste. 1552, Los Angeles, CA 90012 (U.S. Mail)

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| __10/23/2018__ | __Jeremy Romero__ | __/s/ Jeremy Romero__ |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

<div align="center">

**CONTINUATION PAGE**

</div>

### A.  **RELIEF UNDER 11 U.S.C. §362(d)(4) IS APPROPRIATE**:

Pursuant to 11 U.S.C. § 362(d)(4), Debtor's filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved the transfer of all or part ownership of the Property without the consent of Movant or court approval**.**  A scheme is an "intentional artful plot or plan to delay, hinder or defraud creditors." *Turnkey,* at 8, citing *Duncan & Forbes, Dev., Inc.,* 368 B.R. 27 (Bankr. C.D. Cal. 2006).  A scheme may be inferred from circumstantial evidence.  *Id.*  In the matter of *In re 4th St. E. Investors, Inc.,* the court found that there is sufficient evidence to support a scheme to hinder or delay a creditor's remedies where the grant deed shows the transfer is for little or no consideration, the transfer occurred or was made known to creditor when creditor was seeking to pursue remedies against the property, and there is no evidence showing a legitimate purpose for the transfer. 474 B.R. 709 (Bankr. C.D. Cal 2012). The court further found that *In Rem* relief was appropriate despite the lack of debtor involvement because the scheme "involves the fact that filing the petition created an automatic stay". *Id.,* at 711.

This is Borrower's 3rd bankruptcy filing since executing the original note and deed of trust. The first filing was Case Number 10-41476, a Chapter 13 case filed in California Central Bankruptcy on 07/29/2010 , it was dismissed on 10/18/2010. Attached hereto is a true and correct copy of the docket of that case as **Exhibit 7**. The second was Case Number 10-95455, a Chapter 11 case filed in Georgia Northern Bankruptcy Court on 11/30/2010. It was dismissed on 3/2/11. Attached hereto is a true and correct copy of the docket of that case as **Exhibit 8**.

Borrower transferred a 1/3 interest in the property to Edmund Lincoln Anderson on July 4th 2012. The grant deed effecting the transfer states that no consideration was paid for the transfer and that it was a gift. Attached hereto is a true and correct copy of the deed as **Exhibit 9**.

On July 24, 2013 the borrower transferred a 5% interest in the property via grant deed to Cara Eldridge. Attached hereto is a true and correct copy of the deed as **Exhibit 10**.

On October 13th 2015 the borrower granted her entire remaining interest in the property to Edmond Anderson. Attached hereto is a true and correct copy of the deed as **Exhibit 11.**

In August of 2017, after the commencement of the subject case, debtor entered into a loan modification agreement that was premised on the borrower still maintaining ownership of the property.  At no point did Borrower obtain permission from Movant to transfer any ownership stake in the property. Borrower failed to disclose that she was no longer an owner of the property when she entered into the modification agreement with the lender. Given these facts, it can be inferred as the case law allows, that a scheme to delay, hinder, or defraud exists.  Thus, the Motion for Relief should be granted.

# EXHIBIT "1"

This page is part of your document - DO NOT DISCARD



RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**12/19/05 AT 08:00am**

**TITLE(S) :**



FEE FEE $85 FF
DAF $ 2
C-20

D.T.T.

NOTIFICATION SENT $4⊚

CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

**THIS FORM IS NOT TO BE DUPLICATED**

**FIDELITY NATIONAL TITLE**
**MCLPC**

Recording Requested By:
J. FOX

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
TARA TINKLENBERG

——— [Space Above This Line For Recording Data] ———

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 13, 2005 , together with all Riders to this document.
(B) "Borrower" is
EVA ANDERSON, AN UNMARRIED WOMAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Initials:

Form 3005 1/01

DOC ID #: [redacted]

3

Borrower's address is
2500 8TH AVENUE, LOS ANGELES, CA 90018
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
(D) "Trustee" is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026 [redacted]
(F) "Note" means the promissory note signed by Borrower and dated DECEMBER 13, 2005 . The Note states that Borrower owes Lender
THREE HUNDRED FIFTY THOUSAND and 00/100

Dollars (U.S. $ 350,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2036 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: CLH

-6A(CA) (0207)     CHL (09/02)          Page 2 of 16                          Form 3005 1/01

DOC ID #: ▐�▐▐▐▐▐▐

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

LOT 444 OF SUPPLEMENTAL MAP OF HYDE PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 34 PAGE(S) 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. ASSESSOR'S PARCEL NO: ▐▐▐▐▐▐▐

Parcel ID Number: ▐▐▐▐▐▐        which currently has the address of

6520-22 BRYNHURST AVE, LOS ANGELES
[Street/City]

California    90018    ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

DOC ID #:

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)    CHL (09/02)                    Page 4 of 16              Initials: _____        Form 3005 1/01



DOC ID #: ▮

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.





**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: ██████

*B*

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

  -6A(CA) (0207)      CHL (09/02)          Page 7 of 18                                    Initials: *E.A.*
                                                                                                     Form 3005 1/01

DOC ID #:



Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #:

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security



DOC ID #:

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

 -6A(CA) (0207)          CHL (09/02)          Page 10 of 16          Initials _____          Form 3005 1/01



DOC ID #:

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (09/02)               Page 11 of 16

Initials: E.H.

Form 3005 1/01

*13*

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #:

14

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.



-6A(CA) (0207)          CHL (09/02)          Page 13 of 16          Initials: _E.L.A.I_          Form 3005 1/01



DOC ID #:

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



DOC ID #: ▮▮▮▮▮▮▮▮

/16

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ *Eva Anderson* (Seal)
EVA ANDERSON                                              -Borrower

_____ (Seal)
                                                                  -Borrower

_____ (Seal)
                                                                  -Borrower

_____ (Seal)
                                                                  -Borrower

32 of 105

**State of California**
**County of** Los Angeles

DOC ID #: ▮▮▮▮

} ss.

17

On December 13, 2005 before me, Sue Hasseler, Notary public

personally appeared

Eva Anderson

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to, personally known to me the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SUE HASSELER
COMM. #1533506
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Dec. 11, 2008

_____ (Seal)

-6A(CA) (0207)    CHL (09/02)    Page 16 of 16    Initials: ___    Form 3005 1/01

18

# ADJUSTABLE RATE RIDER
(PayOption MTA Twelve Month Average Index - Payment Caps)

[Escrow/Closing #]          [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this  THIRTEENTH          day of
DECEMBER, 2005     , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Countrywide Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

6520-22 BRYNHURST AVE
LOS ANGELES, CA 90018
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

   **ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   The Note provides for changes in the interest rate and the monthly payments, as follows:

* **PayOption MTA ARM Rider**
**1E310-XX (09/05)(d)**          Page 1 of 6




*19*

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of        1.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of       1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first                    day of FEBRUARY, 2006       , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding            THREE & 575/1000 percentage point(s) (     3.575 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than       9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

* PayOption MTA ARM Rider
1E310-XX (09/05)              Page 2 of 6



DOC ID #: ▓▓▓▓▓▓

I will make my monthly payments on the FIRST day of each month beginning on February, 2006 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2036 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,207.92 , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of FEBRUARY, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

\* **PayOption MTA ARM Rider**
**1E310-XX (09/05)** Page 3 of 6

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

**• PayOption MTA ARM Rider**
**1E310-XX (09/05)**                     Page 4 of 6



DOC ID #: [redacted]

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

23

DOC ID #: ▮▮▮▮▮▮▮▮

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Eva Anderson_

EVA ANDERSON                                                    -Borrower

_____              -Borrower

_____              -Borrower

_____              -Borrower

● PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 6 of 6

*24*

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
TARA TINKLENBERG

[Escrow/Closing #]          [Doc ID #]

**MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 5

**-57R** (0411)    **CHL (11/04)(d)**       Initials:

VMP Mortgage Solutions, Inc. (800)521-7291    **Form 3170 1/01**




25

DOC ID #:

THIS 1-4 FAMILY RIDER is made this THIRTEENTH day of DECEMBER, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Bank, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

6520-22 BRYNHURST AVE, LOS ANGELES, CA 90018

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

-57R (0411)     CHL (11/04)     Page 2 of 5

Initials:
Form 3170 1/01



DOC ID #:

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Initials:

Form 3170 1/01

*27*

DOC ID #:

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials
Form 3170 1/01

DOC ID #: ▓▓▓▓▓▓▓▓▓▓▓

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_Eva Anderson_ _____ (Seal)
EVA ANDERSON                                  - Borrower

_____ (Seal)
                                              - Borrower

_____ (Seal)
                                              - Borrower

_____ (Seal)
                                              - Borrower

**VMP®** **-57R** (0411)     **CHL (11/04)**          Page 5 of 5                    **Form 3170 1/01**

# EXHIBIT "2"

Prepared by: TARA TINKLENBERG

LOAN #:

# ADJUSTABLE RATE NOTE
(MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

DECEMBER 13, 2005                  CHULA VISTA                  CALIFORNIA
[Date]                             [City]                       [State]

6520-22 BRYNHURST AVE, LOS ANGELES, CA 90018
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 350,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed       115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is Countrywide Bank, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

### (A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of       1.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of       1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B)  Interest Rate Change Dates

The interest rate I will pay may change on the first        day of FEBRUARY, 2006        , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C)  Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 575/1000        percentage point(s)       3.575 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than       9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first        day of each month beginning on FEBRUARY 01, 2006        . I will make these payments every month until I have paid all the Principal and interest and any



other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JANUARY 01, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,207.92   , unless adjusted under Section 3(F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first          day of FEBRUARY, 2007   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than   7.500%  of my prior monthly payment. This 7.500%  limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number   1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

### (E) Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN          percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

### (G) Required Full Payment

On the tenth          Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

### (H) Payment Options

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i)   Interest Only Payment: the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

(iii)   15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Eva Anderson_

EVA ANDERSON                                             - Borrower

_____                                 - Borrower

_____                                 - Borrower

_____                                 - Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, N.A.

BY _____
MARIBEL LEDEZMA
COLLATERAL PROCESSING OFFICER

Prepared by: TARA TINKLENBERG

**Countrywide Bank, N.A.**

DATE: 12/13/2005
BORROWER: EVA ANDERSON
CASE #:
LOAN #:
PROPERTY ADDRESS: 6520-22 BRYNHURST AVE
LOS ANGELES, CA 90018

Branch #:
1455 FRAZEE ROAD #102
SAN DIEGO, CA 92108
Phone: (619)688-5100
Br Fax No.: (619)688-9258

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated DECEMBER 13, 2005 , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to
Countrywide Bank, N.A.
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "BORROWER'S RIGHT TO PREPAY" is replaced with the following new section:

### BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. Such an advance payment of Principal is known as a "Prepayment." I may make partial or full Prepayments. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. **My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.**

● Prepayment Penalty Addendum
1E337-XX (12/04)(d)

Page 1 of 2





If within the first THIRTY SIX months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment.

All other terms and conditions of the above referenced Note remain in full force and effect.


_____

EVA ANDERSON                                    Borrower


_____

                                                Borrower


_____

                                                Borrower


_____

                                                Borrower

# EXHIBIT "3"

**This page is part of your document - DO NOT DISCARD**





Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/27/11 AT 12:33PM**

Pages:
- 0003

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



**SEQ:**
**01**

Daily ERDS



**THIS FORM IS NOT TO BE DUPLICATED**





E13

Recording Requested By:
**Bank of America**
Prepared By: **Rene Rosales**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#
Property Address:
**6520-22 Brynhurst Ave**
**Los Angeles, CA 90043-4307**
CA0-ADT                          10/19/2011                          This space for Recorder's use

MIN #:                          '     MERS Phone

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A** whose address is **400 NATIONAL WAY, SIMI VALLEY, CA 93065** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:            **COUNTRYWIDE BANK, N.A.**
Original Borrower(s):       **EVA ANDERSON, AN UNMARRIED WOMAN**
Original Trustee:           **RECONTRUST COMPANY, N.A.**
Date of Deed of Trust:      **12/13/2005**
Original Loan Amount:       **$350,000.00**

Recorded in Los Angeles County, CA on: **12/19/2005**, book N/A, page N/A and instrument number

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
__OCT 1 9 2011__

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:

Jane Martorana Assistant Secretary

State of California
County of Ventura

On **OCT 1 9 2011** before me, '' **Lillian J Ellison** , Notary Public, personally appeared
**Jane Martorana**
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____
My Commission Expires: _____

LILLIAN J. ELLISON
Commission # 1925617
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2015
(Seal)

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
Neuberger Berman Investment Advisers, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



# CORPORATE ASSIGNMENT OF DEED OF TRUST

This Assignment is made without recourse to or against Nationwide Title Clearing, Inc. or Bank of America, N.A., and without representation or warranty, express or implied, by Nationwide Title Clearing, Inc. or Bank of America, N.A.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned,BANK OF AMERICA, N.A., WHOSE ADDRESS IS 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to PROF-2014-S2 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, WHOSE ADDRESS IS 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107 (800)934-6802, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by EVA ANDERSON and recorded on 12/19/2005 as **Instrument** ▓▓▓▓ in the office of the LOS ANGELES County Recorder, CA.

Dated on _10 / 4_ /2016 (MM/DD/YYYY)
BANK OF AMERICA, N.A., by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact

By: _____
**Shannon McKinney**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on _10 4_ /2016 (MM/DD/YYYY), by Shannon McKinney as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for BANK OF AMERICA, N.A., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Danielle Kennedy FF 031287
Notary Public - State of FLORIDA
Commission expires: 06/26/2017

Danielle Kennedy
Notary Public State of Florida
My Commission # FF031287
Expires June 26, 2017

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
▓▓▓▓ -- DOCR ▓▓▓▓ [C-1] FRMCA1

This page is part of your document - **DO NOT DISCARD**





**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/25/16 AT 09:25AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**





**SEQ:**
**01**

DAR - Mail (Intake)

**THIS FORM IS NOT TO BE DUPLICATED**



USB Barcode: ▮▮▮▮ USB Document Sak: ▮▮▮▮ USB Loan Id: ▮▮▮▮

USB Account: ▮▮▮▮

USB Pool: ▮▮▮▮

Name: EVA ANDERSON

Document Type: ASNG - ASNG- ASSIGNMENT - OTHER

Document Notation: PROF-2014-S2 LTT II TO USROF II LTT 2015-1

Recording Prepared and Requested by: M. E.
Wileman

PLEASE FORWARD RECORDED DOCUMENT TO:
U.S. ROF II LEGAL TITLE TRUST 2015-1, BY
U.S. BANK NATIONAL ASSOCIATION, AS
LEGAL TITLE TRUSTEE
c/o M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

### Assignment of Deed of Trust

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, PROF-2014-S2 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL
ASSOCIATION, AS LEGAL TITLE TRUSTEE  60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignor) by
these presents does assign and set over, without recourse, to U.S. ROF II LEGAL TITLE TRUST 2015-1, BY U.S. BANK
NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE  60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107
(Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by EVA
ANDERSON, AN UNMARRIED WOMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS
NOMINEE FOR COUNTRYWIDE BANK, N.A.  ITS SUCCESSORS AND ASSIGNS.  Trustee: RECONTRUST COMPANY,
N.A.  Said deed of trust Dated: 12/13/2005 is recorded in the State of CA, County of Los Angeles on 12/19/2005, Document 05
3113322 AMOUNT: $ 350,000.00      Property Address: 6520-22 BRYNHURST AVE, LOS ANGELES, CA 90043
IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by
its proper officer.  Executed on:  October 20, 2016
PROF-2014-S2 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE  by
Orion Financial Group, Inc. Its Attorney-In-Fact

By:

Melanie A. Arndt, Vice President

ANDERSON    JAR

State of Texas, County of Tarrant

Before me, F. Holley, Notary Public, personally appeared, Melanie A. Arndt, Vice President known to me to be the
person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the
purposes and consideration therein expressed.
Given under my hand and seal of office on 10/20/2016.

F. HOLLEY
Notary Public, State of Texas
My Commission Expires
August 19, 2019

Notary public, F. Holley
My commission expires: August 19, 2019

CA  Los Angeles

NBLLC/USROF/



This page is part of your document - **DO NOT DISCARD**





**Pages:**
**0002**

Recorded/Filed in Official Record
Recorder's Office, Los Angeles Cou
California

**11/02/16 AT 08:55AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



**SEQ:**
**01**

DAR - Mail (Intake)





**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By/Return To:
AMIP Management
Attn: Dena Noble
3020 Old Ranch Pkwy #180
Seal Beach, CA 90740

REDACTED

## ASSIGNMENT OF DEED OF TRUST

For Value Received, **U.S. ROF II LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE** (herein "Assignor") whose address is 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, does hereby grant, sell, assign, transfer and convey, unto **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-B,** (herein "Assignee"), whose address is 3020 OLD RANCH PARKWAY, STE 180, SEAL BEACH, CA 90740, a certain DEED OF TRUST dated **12/13/2005**, made and executed by **EVA ANDERSON, AN UNMARRIED WOMAN**, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A.**, Trustee: **RECONTRUST COMPANY, N.A.** for $350,000.00, recorded on **12/19/2005** as Instrument No. **05 3113322** in the Official Records of **LOS ANGELES** County, State of **CALIFORNIA**, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such DEED OF TRUST.

Property Address: **6520-22 BRYNHURST AVE, LOS ANGELES, CA 90043**

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described DEED OF TRUST.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of DEED OF TRUST on ____August 1,____, 20 18

> **U.S. ROF II LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE**
> By: American Mortgage Investment Partners Management, LLC, its Attorney-in-Fact*
>
> By: _____
> Ron McMahan
> CEO

*POA recorded in Riverside County, CA on 5/21/2018 as Doc # 2018-0200932

**Prepared by: Valya Fisher, AMIP Management, 3020 Old Ranch Pkwy, #180, Seal Beach, CA 90740 562-735-6555**

ASSIGNMENT OF DEED OF TRUST PAGE 2 OF 2

---

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

                      ) ss

County of Orange

On ___August 1, 2018___ before me, _Claudia E. Arias_____, the undersigned Notary Public, personally appeared Ron McMahan who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

CLAUDIA E. ARIAS
COMM. #2220792
Notary Public - California
Orange County
My Comm. Expires Nov. 5, 2021

Signature_____

(Seal)

"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

# EXHIBIT "4"

REDAC

| Loan Number | | | | | |
|---|---|---|---|---|---|
| Investor Name | | | RCO | | |
| Debtor Name | | | Eva Anderson | | |
| Filing Date | | | 5/23/2017 | | |
| BK Case Number: | | | 17-16372 | | |
| Chapter | | | 13 | | |
| 1st Post Pet Pmt Due | | | 6/1/2017 | | |
| Plan Confirmed | | | | | |
| Post-Petition Due | Date Received | Amount Received | Amount Due | Suspense Application | Suspense Balance |
| 8/1/2017 | 9/26/2017 | $2,430.26 | $2,430.26 | | |
| 9/1/2017 | 9/26/2017 | $2,430.26 | $2,430.26 | | |
| | 10/23/2017 | $1,874.54 | $2,430.26 | | $1,874.54 |
| | 1/20/2018 | $1,913.24 | | | $3,787.78 |
| 10/1/2017 | | | | $2,430.26 | |
| | | | | | $ 1,357.52 |
| | 2/23/2018 | $1,913.24 | | | $ 3,270.76 |
| 11/1/2017 | | | | $ 2,430.26 | |
| | | | | | $ 840.50 |
| | 3/29/2018 | $1,913.24 | | | $ 2,753.74 |
| 12/1/2017 | | | | $ 2,430.26 | |
| | | | | | $ 323.48 |

Post-Petition Modification - 1st payment due 8/1/2017 @ $2,430.26

Loan due for 1/1/2018

# EXHIBIT "5"

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Eva Anderson** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | 2:17-bk-16372-NB |

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| | | |
|---|---|---|
| **1.1** | | |

**1932 W 37th Place**
**a/k/a 1932 Rochester Circle**
Street address, if available, or other description

| | | |
|---|---|---|
| **Los Angeles** | **CA** | **90018-0000** |
| City | State | ZIP Code |

**Los Angeles**
County

**What is the property?** Check all that apply

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**4 BD/4BA, two car garage, 4,619 SQF single family built in 1941. Debtor is 15% owner with four other tenants-in-common, and liable for the same percentage of the debt service. This property operates a short-term rental and living facility, in addition to being occupied by Debtor as her primary residence.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,200,000.00** | **$180,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property
(see instructions)

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

Debtor 1    **Eva Anderson**                                                    Case number *(if known)*    **2:17-bk-16372-NB**

**If you own or have more than one, list here:**

1.2

**1929 W 37th Place
a/k/a 1929 Rochester Circle**

Street address, if available, or other description

**Los Angeles        CA      90018-0000**
City                    State      ZIP Code

**Los Angeles**
County

**What is the property?** Check all that apply

- ☑ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative

- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

**Who has an interest in the property?** Check one

- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Other information you wish to add about this item, such as local
property identification number:

**3 Bed / 2 Bath with garage, single family, built in 1950.
Debtor is 50% owner as tenant-in-common, and liable for the same
percentage of the debt service. This property operates a short-term rental
and living facility.**

Do not deduct secured claims or exemptions. Put
the amount of any secured claims on *Schedule D:
Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$597,117.00** | **$298,558.50** |

**Describe the nature of your ownership interest
(such as fee simple, tenancy by the entireties, or
a life estate), if known.**

**Fee simple**

☐ **Check if this is community property**
   (see instructions)

---

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for
    pages you have attached for Part 1. Write that number here.............................................=>    | **$478,558.50** |

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that
someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.  **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☑ No
☐ Yes

4.  **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
    *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
    pages you have attached for Part 2. Write that number here.............................................=>    | **$0.00** |

**Part 3:    Describe Your Personal and  Household Items**

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the
portion you own?**
Do not deduct secured
claims or exemptions.

6.  **Household goods and furnishings**
    *Examples:* Major appliances, furniture, linens, china, kitchenware
    ☐ No
    ☑ Yes.  Describe.....

| Miscelleanous household goods and furnishings, including bedroom set. | **$5,000.00** |
|---|---|

---

| Debtor 1 | **Eva Anderson** | | Case number *(if known)* | **2:17-bk-16372-NB** |

**7. Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
    including cell phones, cameras, media players, games

☐ No

■ Yes.  Describe.....

| 4 (45 in) Televisions, approx. value of $200 each.<br>Location: 1932 Rochester Circle, Los Angeles CA 90018 | $800.00 |

**8. Collectibles of value**

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
    other collections, memorabilia, collectibles

■ No

☐ Yes.  Describe.....

**9. Equipment for sports and hobbies**

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
    musical instruments

■ No

☐ Yes.  Describe.....

**10. Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

■ No

☐ Yes.  Describe.....

**11. Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

■ Yes.  Describe.....

| Misc Woman's Clothes and Shoes.<br>Location: 1932 Rochester Circle, Los Angeles CA 90018 | $1,000.00 |

**12. Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No

■ Yes.  Describe.....

| One Diamond Ring. | $1,500.00 |

**13. Non-farm animals**

*Examples:* Dogs, cats, birds, horses

■ No

☐ Yes.  Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**

■ No

☐ Yes.  Give specific information.....

| 15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .......................................................................... | $8,300.00 |

---

**Part 4:**   Describe Your Financial Assets

Do you own or have any legal or equitable interest in any of the following?

Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

---

| Debtor 1 | **Eva Anderson** | Case number *(if known)* | 2:17-bk-16372-NB |
|---|---|---|---|

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

■ No

☐ Yes.................................................................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
institutions. If you have multiple accounts with the same institution, list each.

☐ No

■ Yes.......................        Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking Account** | JP Morgan Chase Bank N.A<br>Containing only Social Security Income.<br>Account Ending xxxx1525 | $24,967.00 |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No

☐ Yes...................        Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and
joint venture**

■ No

☐ Yes.  Give specific information about them....................
        Name of entity:                                        % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No

☐ Yes. Give specific information about them
        Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No

☐ Yes. List each account separately.
        Type of account:                Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No

☐ Yes. ......................        Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No

☐ Yes.............        Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

☐ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No

☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No

☐ Yes.  Give specific information about them...

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

| Debtor 1 | Eva Anderson | Case number *(if known)* | 2:17-bk-16372-NB |
|---|---|---|---|

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes.  Give specific information..

31. **Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.

Company name:                    Beneficiary:                    Surrender or refund value:

32. **Any interest in property that is due from you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
■ No
☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**...................................................................................................................

| $24,967.00 |
|---|

**Part 5:**    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
■ No. Go to Part 6.
☐ Yes.  Go to line 38.

Debtor 1    **Eva Anderson**                                                      Case number *(if known)*    **2:17-bk-16372-NB**

| Part 6: | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

   ☑ No. Go to Part 7.

   ☐ Yes.  Go to line 47.

| Part 7: | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |
|---|---|

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership

   ☑ No

   ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................    **$0.00**

| Part 8: | **List the Totals of Each Part of this Form** |
|---|---|

55. **Part 1: Total real estate, line 2** ...........................................................................................    **$478,558.50**

56. **Part 2: Total vehicles, line 5**                                                          **$0.00**

57. **Part 3: Total personal and household items, line 15**                                     **$8,300.00**

58. **Part 4: Total financial assets, line 36**                                                 **$24,967.00**

59. **Part 5: Total business-related property, line 45**                                        **$0.00**

60. **Part 6: Total farm- and fishing-related property, line 52**                               **$0.00**

61. **Part 7: Total other property not listed, line 54**                                 +      **$0.00**

62. **Total personal property.** Add lines 56 through 61...        **$33,267.00**    Copy personal property total        **$33,267.00**

63. **Total of all property on Schedule A/B**. Add line 55 + line 62                                        **$511,825.50**

| **Fill in this information to identify your case:** |
|---|

| Debtor 1 | **Eva Anderson** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 2:17-bk-16372-NB | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | **Column A**<br>Amount of claim<br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim | **Column C**<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1** **Bank of America N.A** <br> Creditor's Name | **Describe the property that secures the claim:** | **$1,060,715.88** | **$1,200,000.00** | **$0.00** |

**2.1** **Bank of America N.A**
Creditor's Name

**Describe the property that secures the claim:**

**1932 W 37th Place a/k/a 1932 Rochester Circle Los Angeles, CA 90018  Los Angeles County
4 BD/4BA, two car garage, 4,619 SQF single family built in 1941.
Debtor is 15% owner with four other tenants-in-common, and liable for the same percen**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Attn: Officer / Bankruptcy
100 North Tyron St
Charlotte, NC 28202**
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  **April 2007**     Last 4 digits of account number   **8872**

| **2.2** **Fay Servicing LLC** <br> Creditor's Name | **Describe the property that secures the claim:** | **$291,500.00** | **$621,117.00** | **$0.00** |
|---|---|---|---|---|

**6520-22 Brynhurst Avenue Los Angeles, CA 90043  Los Angeles County.  4 Bedroom / 2 Bath (two 2BD/1BA units), 1,612 SQF duplex, built in 1944.
Debtor is 0.00% owner and liable for the same percentage of the debt service.**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Attn:  Bankruptcy
PO Box 809441
Chicago, IL 60680-9441**
Number, Street, City, State & Zip Code

Debtor 1   **Eva Anderson**

First Name     Middle Name     Last Name

Case number (if know)   **2:17-bk-16372-NB**

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim relates to a
community debt**

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured
car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred   **12/13/2005**     Last 4 digits of account number   **012X**

| 2.3 | **Wells Fargo Home Mortgage** | | | |
|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:**   $408,501.00   $597,117.00   $0.00

**1929 W 37th Place a/k/a 1929
Rochester Circle Los Angeles, CA
90018  Los Angeles County
3 Bed / 2 Bath with garage, single
family, built in 1950.
Debtor is 50% owner as
tenant-in-common, and liable for the
same percentage of the debt se**

**Attn: Bankruptcy
P.O Box 10335
Des Moines, IA 50306**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that
apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim relates to a
community debt**

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured
car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred   **4/2007**     Last 4 digits of account number   **5363**

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $1,760,716.88 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $1,760,716.88 |

**Part 2:**   List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐
Name, Number, Street, City, State & Zip Code
**Fay Servicing LLC
Attn:  Bankruptcy
440 S. LaSalle Street, Ste. 2000
Chicago, IL 60605**

On which line in Part 1 did you enter the creditor?   **2.2**

Last 4 digits of account number   **012X**

☐
Name, Number, Street, City, State & Zip Code
**First American Title Insurance Comp
1500 Solana Blvd
Bldg 6 Ste 6100
Roanoke, TX 76262**

On which line in Part 1 did you enter the creditor?   **2.3**

Last 4 digits of account number   **1541**

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

| | |
|---|---|
| Debtor 1 **Eva Anderson** | Case number (if know) **2:17-bk-16372-NB** |
| First Name        Middle Name        Last Name | |

| | |
|---|---|
| ☐ Name, Number, Street, City, State & Zip Code<br>**National Default Servicing Corp.**<br>**7720 N. 16th Street**<br>**Suite 300**<br>**Phoenix, AZ 85020** | On which line in Part 1 did you enter the creditor? **2.1**<br><br>Last 4 digits of account number **SPCA** |
| ☐ Name, Number, Street, City, State & Zip Code<br>**Rushmore Loan Management Services**<br>**Attn:  Bankruptcy**<br>**P.O. Box 55004**<br>**Irvine, CA 92619** | On which line in Part 1 did you enter the creditor? **2.3**<br><br>Last 4 digits of account number **8704** |
| ☐ Name, Number, Street, City, State & Zip Code<br>**Rushmore Loan Management Services**<br>**Attn:  Bankruptcy**<br>**15480 Laguna Canyon Road, Ste 100**<br>**Irvine, CA 92618** | On which line in Part 1 did you enter the creditor? **2.3**<br><br>Last 4 digits of account number **8704** |
| ☐ Name, Number, Street, City, State & Zip Code<br>**Select Portfolio Servicing, Inc.**<br>**Attn:  Bankruptcy**<br>**P.O. Box 65250**<br>**Salt Lake City, UT 84165-0250** | On which line in Part 1 did you enter the creditor? **2.1**<br><br>Last 4 digits of account number **1436** |
| ☐ Name, Number, Street, City, State & Zip Code<br>**Select Portfolio Servicing, Inc.**<br>**Attn:  Bankruptcy**<br>**P.O. Box 65277**<br>**Salt Lake City, UT 84165-0277** | On which line in Part 1 did you enter the creditor? **2.1**<br><br>Last 4 digits of account number **1436** |
| ☐ Name, Number, Street, City, State & Zip Code<br>**Wells Fargo Bank, N.A.**<br>**Attn:  Officer / Bankruptcy**<br>**101 N. Phillips Avenue**<br>**Sioux Falls, SD 57104** | On which line in Part 1 did you enter the creditor? **2.3**<br><br>Last 4 digits of account number **5363** |

Official Form 106D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page 3 of 3

# EXHIBIT "6"

Prepared By & Return To:
FAY SERVICING, LLC
MODIFICATION PROCESSING
DEPARTMENT
440 S. LASALLE ST., STE. 2000
CHICAGO, IL 60605

Received

AUG 0 3 2017

Fay Servicing, LLC

Fay Servicing, LLC Loan No. █████

—————————————[Space Above This Line For Recording Data]—————————————

MIN: █████████

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

Borrowers ("Borrower"): **EVA ANDERSON**
Lender ("Lender"): **U.S. ROF II LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL
ASSOCIATION, AS LEGAL TITLE TRUSTEE**
Mortgage Electronic Registration Sytems, Inc. ("MERS") P.O Box 2026, Flint, MI 48501-2025, tel (888)
679-MERS ("Mortgagee")
Date of first lien Security Instrument ("Security Instrument") and Note ("Note"): **December 13, 2005**
Property Address ("Property"): **6520 -22 BRYNHURST A, LOS ANGELES, CA 90043**

This Loan Modification Agreement (the "Agreement"), amends and supplements the Security
Instrument and Timely Payment Rewards Rider if any and the Note, bearing the same date as, and secured
by the Security Instrument which covers the Property. Capitalized terms used in this Agreement and not
defined have the meaning given to them in Loan Documents.

## RECITALS

WHEREAS, Borrower is prepared to make a principal payment of **$0.00** and desires a
modification of the Loan Documents, as set forth herein; and

WHEREAS, Lender has agreed to modify the Loan Documents in accordance with the terms and
conditions set forth in this Agreement upon receipt of **$0.00** from Borrower; and

---

Loan Modification Agreement
Proprietary W3078B                          Page 1 of 7

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated herein by this reference, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrower agree as follows.

<u>COVENANTS AND CONDITIONS</u>

1. This Agreement shall become effective and binding upon Lender's receipt and acceptance of:

    a. This Agreement, properly executed by Borrower, no later than **August 1, 2017.**

    b. An ACH payment, certified check, money order, or personal check made payable to **Fay Servicing, LLC** in the amount of **$0.00** no later than **N/A** (the "Good Faith Payment").

2. If the preconditions to the modification set forth in Section 1 have been met, Lender shall modify the Loan Documents as follows:

    a. As of **August 1, 2017**, the amount payable under the Note and the Security Instrument will be reduced by **$0.00**. Thereafter, the remaining unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized will be **$261,161.35** (the "New Principal Balance").

    b. Lender will amortize **$261,161.35** of the New Principal Balance (the "Amortized Principal Balance") and defer the remaining **$0.00** of the New Principal Balance until the Maturity Date (the "Deferred Principal Balance").

    c. On **January 1, 2036** (the "Maturity Date"), Borrower promises to pay **$0.00** (the "Balloon Payment") and **$0.00** (the "Deferred Principal Balance") to the order of Lender. If on the Maturity Date, Borrower still owes any amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. Borrower promises to pay the Amortized Principal Balance, plus Interest, together with all payments of taxes, insurance premiums, assessments, impounds, and all other related payments (the "Escrowed Funds") to the order of Lender, beginning on **August 1, 2017**, and continuing thereafter on the first day of each succeeding month until the Amortized Principal Balance and Interest are paid in full. Interest will begin to accrue on the Amortized Principal Balance at the yearly rate of **5.875%**, beginning on **July 1, 2017**. The monthly payment will be **$1,931.90** for Principal and Interest, plus **$498.36** for Escrow for a total monthly payment of **$2,430.26**. Please note, however, that the amount of Borrower's Escrow payment may be adjusted periodically in accordance with applicable law and, therefore, the total monthly payment may change accordingly.

4. Lender promises to maintain Borrower's Escrowed Funds in a separately managed account and to pay Borrower's related expenses with Borrower's Escrowed Funds. Lender hereby revokes any waiver as to payment of Borrower's Escrow related expenses.

5. If all of any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Loan Documents. Borrower will continue to be obligated under the Loan Documents unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

6. Borrower promises to comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date of this Agreement:

   a. All terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in the Timely Payment Rewards Addendum to Note and Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   b. All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in (a) above.

7.  Borrower understands and agrees that:

    a.  If Borrower fails to fulfill the preconditions to the modification set forth in Section 1, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided under the Loan Documents.

    b.  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    c.  All covenants, agreements, stipulations, and conditions in the Loan Documents shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Loan Documents shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Loan Documents, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Loan Documents are expressly reserved by Lender.

    d.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Documents.

    e.  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    f.  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement and in any Rider attached hereto and executed by Borrower simultaneously herewith.

_E. Michael White_
WITNESS: E. MICHAEL WHITE

_Beatrice Spencer_
WITNESS: BEATRICE SPENCER

_Eva Anderson_ (Seal)
**EVA ANDERSON**                -Borrower
[Printed Name]

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CA___  §

County of ___Los Angeles___  §

On ___07/31/17___ before me, ___Erica Simone Sykes___, Notary Public personally appeared **EVA ANDERSON**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ERICA SIMONE SYKES
Commission # 2076557
Notary Public - California
Los Angeles County
My Comm. Expires Aug 28, 2018

Notary Public

Printed Name  ___Erica Simone Sykes___

My Commission Expires: ___08/28/18___

(Seal)

---

**Loan Modification Agreement**
**Proprietary W3078B**                    Page 5 of 7

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
U.S. ROF II LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL
TITLE TRUSTEE

By: _____          02 / 14 / 18
FAY SERVICING, LLC               -Lender   Date of Lender's Signature

## ACKNOWLEDGMENT

State of ILLINOIS                §
                                 §
County of COOK                   §

This instrument was acknowledged before me on _____2/14/2018_____ by FAY
SERVICING, LLC as MODIFICATION PROCESSING DEPARTMENT of U.S. ROF II LEGAL TITLE
TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE.

_____
Signature of Notary Public

_____Shungu Chimbangy_____
Printed Name

_____NOTARY PUBLIC_____
Title or Rank

(Seal)                           Serial Number, if any: _____

"OFFICIAL SEAL"
SHUNGU CHIMBANGY
Notary Public, State of Illinois
My Commission Expires 6/1/2021

Loan Modification Agreement
Proprietary W3078B                    Page 6 of 7

MERS

_____

Mortgage Electronic Registration Systems, Inc. - Nominee for Lender


### ACKNOWLEDGMENT

State of ___ILLINOS___                                    §
                                                          §
County of ___COOK___                                      §

    The foregoing instrument was acknowledged before me on ___2/14/2018___ by LAUREN POWELL
                , as         of

a                  corporation, on behalf of the corporation.

                 _____
                 Signature of Person Taking Acknowledgment

                 ___Shungu Chimbangy___
                 Printed Name

                 ___NOTARY  PUBLIC___
                 Title or Rank

(Seal)            Serial Number, if any: _____


```
"OFFICIAL SEAL"
SHUNGU CHIMBANGY
Notary Public, State of Illinois
My Commission Expires 6/1/2021
```

Loan Modification Agreement
Proprietary W3078B                          Page 7 of 7

# EXHIBIT "7"

# U.S. Bankruptcy Court
# Central District of California (Los Angeles)
# Bankruptcy Petition #: 2:10-bk-41476-AA

|  |  |
|---|---|
| | *Date filed:* 07/29/2010 |
| *Assigned to:* Alan M. Ahart | *Date terminated:* 11/15/2010 |
| Chapter 13 | *Debtor dismissed:* 10/18/2010 |
| Voluntary | *341 meeting:* 09/03/2010 |
| Asset | |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Eva Anderson** |
| **Eva Anderson** | PRO SE |
| 1932 Rodchester Cir | |
| Los Angeles, CA 90018 | |
| LOS ANGELES-CA | |
| SSN / ITIN: xxx-xx-8407 | |

**Trustee**
**Kathy A Dockery (TR)**
801 Figueroa Street, Suite 1850
Los Angeles, CA 90017
(213) 996-4400

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 07/29/2010 | [1](#)<br>(15 pgs; 3 docs) | Chapter 13 Voluntary Petition . Receipt Number o, Fee Amount $274 Filed by Eva Anderson Schedule A due 8/12/2010. Schedule B due 8/12/2010. Schedule C due 8/12/2010. Schedule D due 8/12/2010. Schedule E due 8/12/2010. Schedule F due 8/12/2010. Schedule G due 8/12/2010. Schedule H due 8/12/2010. Schedule I due 8/12/2010. Schedule J due 8/12/2010. Statement of Financial Affairs due 8/12/2010. Chapter 13 Plan due by 8/12/2010. Statement - Form 22C Due: 8/12/2010. |

|  |  | Statement of assistance of non-attorney due 8/12/2010. Summary of schedules due 8/12/2010. Declaration concerning debtors schedules due 8/12/2010. Cert. of Credit Counseling due by 8/12/2010. Statistical Summary due 8/12/2010. Debtor Certification of Employment Income due by 8/12/2010. Section 316 due 09/13/2010. Incomplete Filings due by 8/12/2010. (Ghaltchi, Dina) (Entered: 07/29/2010) |
|---|---|---|
| 07/29/2010 | 2 (2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 09/03/2010 at 04:00 PM at RM 103, 725 S Figueroa St, Los Angeles, CA 90017. Confirmation hearing to be held on 10/07/2010 at 10:30 AM at Crtrm 1375, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 12/02/2010. (Ghaltchi, Dina) (Entered: 07/29/2010) |
| 07/29/2010 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Eva Anderson . (Ghaltchi, Dina) (Entered: 07/29/2010) |
| 07/29/2010 |  | Receipt of Chapter 13 Filing Fee - $274.00 by 12. Receipt Number 20089910. (admin) (Entered: 07/30/2010) |
| 07/31/2010 | 4 (5 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting (AutoAssign Chapter 13)) No. of Notices: 21. Service Date 07/31/2010. (Admin.) (Entered: 07/31/2010) |
| 07/31/2010 | 5 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Eva Anderson) No. of Notices: 1. Service Date 07/31/2010. (Admin.) (Entered: 07/31/2010) |
| 07/31/2010 | 6 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Eva Anderson) No. of Notices: 1. Service Date 07/31/2010. (Admin.) (Entered: 07/31/2010) |
| 08/10/2010 | 7 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Darlene C Vigil on behalf of Courtesy NEF. (Vigil, Darlene) (Entered: 08/10/2010) |
| 08/11/2010 | 8 (7 pgs) | Chapter 13 Plan. Filed by Debtor Eva Anderson (RE: related document(s)1 Chapter 13 Voluntary Petition . Receipt Number o, Fee Amount $274 Filed by Eva Anderson Schedule A due 8/12/2010. Schedule B due 8/12/2010. Schedule C due 8/12/2010. Schedule D due 8/12/2010. |

| | | |
|---|---|---|
| | | Schedule E due 8/12/2010. Schedule F due 8/12/2010. Schedule G due 8/12/2010. Schedule H due 8/12/2010. Schedule I due 8/12/2010. Schedule J due 8/12/2010. Statement of Financial Affairs due 8/12/2010. Chapter 13 Plan due by 8/12/2010. Statement - Form 22C Due: 8/12/2010. Statement of assistance of non-attorney due 8/12/2010. Summary of schedules due 8/12/2010. Declaration concerning debtors schedules due 8/12/2010. Cert. of Credit Counseling due by 8/12/2010. Statistical Summary due 8/12/2010. Debtor Certification of Employment Income due by 8/12/2010. Section 316 due 09/13/2010. Incomplete Filings due by 8/12/2010.). (Francis, Dawnette) (Entered: 08/12/2010) |
| 08/11/2010 | 9 (44 pgs) | Summary of Schedules , Statistical Summary of Certain Liabilities, Schedule A , Schedule B , Schedule C , Schedule D , Schedule E , Schedule F , Schedule G , Schedule H , Schedule I , Schedule J , Declaration concerning debtor's schedules , Statement of Financial Affairs , Addendum to Chapter 13 Plan Concerning Debtors Who are Repaying Debt Secured by a Mortgage on Real Property or a Lien on Personal Property the Debtor Occupies as the Debtor's Principal Residence , Chapter 13 Statement of Current Monthly and Disposable Income , Amended Verification of creditor matrix , Amended Matrix (Mailing List). Filed by Debtor Eva Anderson (RE: related document(s)1 Voluntary Petition (Chapter 13)). (Francis, Dawnette) (Entered: 08/13/2010) |
| 08/13/2010 | 10 (1 pg) | Notice of Deficiency of Filing Fees Required to Add Additional Creditors (Kim, Ji Yun) (Entered: 08/13/2010) |
| 08/13/2010 | 11 (1 pg) | Certificate of Credit Counseling. Filed by Debtor Eva Anderson (RE: related document(s)1 Voluntary Petition (Chapter 13)). (Francis, Dawnette) (Entered: 08/16/2010) |
| 08/13/2010 | 12 (1 pg) | Document Certificate of Debtor Education ONLY. Requirement NOT MET. Filed by Debtor Eva Anderson (Francis, Dawnette) (Entered: 08/16/2010) |
| 08/17/2010 | 13 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Les A Zieve on behalf of Ocwen Loan Servicing, LLC. (Zieve, Les) (Entered: 08/17/2010) |
| 08/18/2010 | 14 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Darlene C Vigil on behalf of Courtesy NEF. (Vigil, |

| | | Darlene) (Entered: 08/18/2010) |
|---|---|---|
| 08/18/2010 | [15](#) (3 pgs) | Notice Deficiency Notice re: Official Form 23. (Francis, Dawnette) (Entered: 08/18/2010) |
| 08/18/2010 | [16](#) (1 pg) | Certificate of Credit Counseling (duplicate). Filed by Debtor Eva Anderson . (Francis, Dawnette) (Entered: 08/19/2010) |
| 08/20/2010 | | Receipt of Conversion Chapter 11 Filing Fee - $765.00 by 12. Receipt Number 20092030. (admin) (Entered: 08/23/2010) |
| 08/20/2010 | [17](#) (1 pg) | Notice of motion/application to convert from chapter 13 to chapter 11 Filed by Debtor Eva Anderson . (Peters, Sandra) (Entered: 08/24/2010) |
| 08/20/2010 | [18](#) (1 pg) | Motion to Convert Case From Chapter 13 to 11. Receipt Number O, Fee Amount $765 Filed by Debtor Eva Anderson (Peters, Sandra) (Entered: 08/24/2010) |
| 08/25/2010 | [19](#) (4 pgs) | Notice of Hearing Filed by. (Dockery (TR), Kathy) (Entered: 08/25/2010) |
| 08/27/2010 | [20](#) (2 pgs) | Order Denying Debtor's Motion to Convert Case Signed on 8/27/2010 (RE: related document(s)[18](#) Motion to Convert Case filed by Debtor Eva Anderson). (Alcala, Maria) (Entered: 08/27/2010) |
| 09/10/2010 | [21](#) (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Ramesh Singh on behalf of Courtesy NEF. (Singh, Ramesh) (Entered: 09/10/2010) |
| 09/10/2010 | [22](#) (24 pgs; 3 docs) | Objection (related document(s): [8](#) Chapter 13 Plan filed by Debtor Eva Anderson *Objection to Confirmation of Chapter 13 Plan* Filed by Creditor Ocwen Loan Servicing, LLC (Attachments: [1](#) Exhibit[2](#) Proof of Service) (Zieve, Les) (Entered: 09/10/2010) |
| 10/04/2010 | [23](#) (3 pgs) | Objection to Confirmation of Plan Filed by Creditor Bank of America (RE: related document(s)[8](#) Chapter 13 Plan. Filed by Debtor Eva Anderson). (Nachimson, Benjamin) (Entered: 10/04/2010) |
| 10/04/2010 | [24](#) (45 pgs) | Objection to Confirmation of Plan Filed by Creditor Wells Fargo Bank, N.A. (RE: related document(s)[8](#) Chapter 13 Plan. Filed by Debtor Eva Anderson). (Kim, Gerald) |

| | | (Entered: 10/04/2010) |
|---|---|---|
| 10/06/2010 | 25<br>(6 pgs) | Debtor's Request for Voluntary Dismissal of Ch 13 Case Filed by Debtor Eva Anderson . (Peters, Sandra) (Entered: 10/07/2010) |
| 10/12/2010 | 27<br>(2 pgs) | Request for special notice Filed by Creditor BAC Home Loan Servicing LP. (Lozano, Joe) (Entered: 10/12/2010) |
| 10/13/2010 | 28<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Les A Zieve on behalf of Ocwen Loan Servicing, LLC. (Zieve, Les) (Entered: 10/13/2010) |
| 10/18/2010 | 29<br>(1 pg) | ORDER and Notice of dismissal arising from chapter 13 confirmation hearing - **Debtor** Dismissed. (BNC) (Alcala, Maria) (Entered: 10/18/2010) |
| 10/20/2010 | 30<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)29 ORDER and Notice of Dismissal arising from Ch 13 Conf. Hrg. (BNC)) No. of Notices: 27. Service Date 10/20/2010. (Admin.) (Entered: 10/20/2010) |
| 11/04/2010 | 31<br>(3 pgs) | Chapter 13 Trustee's Final Report and Account . (Dockery (TR), Kathy) (Entered: 11/04/2010) |
| 11/04/2010 | 32<br>(1 pg) | Proof of service Filed by (RE: related document(s)31 Chapter 13 Trustee's Final Report and Account (batch)). (Dockery (TR), Kathy) (Entered: 11/04/2010) |
| 11/08/2010 | 33<br>(1 pg) | ORDER discharging chapter 13 panel trustee and exonerate bond liability Signed on 11/8/2010. (Kaaumoana, William) (Entered: 11/08/2010) |
| 11/15/2010 | 34<br>(1 pg) | Bankruptcy Case Closed - DISMISSED (Vandensteen, Nancy) (Entered: 11/15/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/23/2018 13:56:36 | | |
| **PACER Login:** | mglaw5120:3934026:0 | **Client Code:** | Jeremy |

| **Description:** | Docket Report | **Search Criteria:** | 2:10-bk-41476-AA Fil or Ent: filed To: 10/23/2018 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| --- | --- | --- | --- |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

# EXHIBIT "8"

**DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Northern District of Georgia (Atlanta)
## Bankruptcy Petition #: 10-95455-mhm

*Date filed:* 11/30/2010

| | |
|---|---|
| *Assigned to:* Judge Margaret z-Murphy | *Date terminated:* 03/21/2011 |
| Chapter 11 | *Debtor dismissed:* 03/02/2011 |
| Voluntary | *341 meeting:* 01/04/2011 |
| Asset | *Deadline for objecting to discharge:* 03/07/2011 |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Dorna Jenkins Taylor** |
| **Eva Anderson** | Taylor & Associates, LLC |
| 1964 Saxon Valley Circle | Suite 750 |
| Atlanta, GA 30319 | 3355 Lenox Road, NE |
| DE KALB-GA | Atlanta, GA 30326 |
| SSN / ITIN: xxx-xx-8407 | 404-507-2066 |
| | Fax : (404) 745-0136 |
| | Email: dorna.taylor@taylorattorneys.com |
| | |
| **U.S. Trustee** | represented by **James H. Morawetz** |
| **Office of the United States Trustee** | Office of U.S. Trustee |
| 362 Richard Russell Building | 362 Richard Russell Bldg. |
| 75 Ted Turner Drive, SW | 75 Ted Turner Drive, SW |
| Atlanta, GA 30303 | Atlanta, GA 30303 |
| 404-331-4437 | 404-331-4437 x121 |
| | Fax : (404) 730-3534 |

| Filing Date | # | Docket Text |
|---|---|---|
| 11/30/2010 | 1<br>(23 pgs) | Voluntary Petition (Chapter 11) Fee $ 1039, Filed by Dorna Jenkins Taylor of Taylor & Associates, LLC on behalf of Eva Anderson. Chapter 11 Plan due by 3/30/2011. Disclosure Statement due by 3/30/2011. Statement of Financial Affairs due 12/14/2010. Schedule B due 12/14/2010. Schedule C due 12/14/2010. Schedule I due 12/14/2010. Schedule J due 12/14/2010. Summary of Schedules due 12/14/2010.Statistical Summary due 12/14/2010. Atty Disclosure State. due 12/14/2010.Means Test or Monthly Income Statement Form Due: 12/14/2010. Debtor Payment Advices Due:12/14/2010, Incomplete Filings due by |

| | | |
|---|---|---|
| | | 12/14/2010. (Taylor, Dorna) |
| 11/30/2010 | 2 | Receipt of Initial Docs01: Voluntary Petition (Chapter 11)(10-95455) [misc,4002aty] (1039.00) filing fee. Receipt Number 22017847. Fee Amount 1039.00 (U.S. Treasury) |
| 12/01/2010 | 3 (1 pg) | Notice of deficient filing regarding bankruptcy petition. Service by BNC. Statement of Financial Affairs due 12/14/2010. Schedule(s) B, C, I, J due by 12/14/2010, Summary of Schedules due 12/14/2010. Statistical Summary due 12/14/2010. Credit Counseling Certificate due by 12/14/2010, Atty Disclosure State. due 12/14/2010. Means Test or Monthly Income Statement Form Due: 12/14/2010. Debtor Payment Advices Due:12/14/2010. 11 USC 521(i) Filings due by 1/14/2011. (mbr) Modified to enhance text on 12/1/2010 (mbr). |
| 12/01/2010 | 4 (2 pgs) | Notice of Appearance (Attorney) filed by James H. Morawetz on behalf of Office of the United States Trustee. (Morawetz, James) |
| 12/02/2010 | 5 (3 pgs; 2 docs) | Notice of Meeting of Creditors (Chapter 11). 341 Meeting to be held on 1/4/2011 at 11:00 AM at Hearing Room 363, Atlanta. Objections for Discharge due by 3/7/2011 Non-Government Proof of Claims due by 4/4/2011 (wrw) |
| 12/03/2010 | 6 (1 pg) | Order and Notice Of Status Conference. Service by BNC. Entered on 12/3/2010. Hearing to be held on 1/11/2011 at 11:45 AM in Courtroom 1204, Atlanta, (mbr) |
| 12/03/2010 | 7 (2 pgs) | Certificate of Mailing by BNC of Notice of Deficiency Service Date 12/03/2010. (Admin.) (Entered: 12/04/2010) |
| 12/04/2010 | 8 (2 pgs) | Notice to Debtor Re: Financial Mgmt. Certification. Served by BNC. Service Date 12/04/2010. (Admin.) (Entered: 12/05/2010) |
| 12/04/2010 | 9 (5 pgs) | Certificate of Mailing by BNC of Notice of Meeting of Creditors Service Date 12/04/2010. (Admin.) (Entered: 12/05/2010) |
| 12/05/2010 | 10 (2 pgs) | Certificate of Mailing by BNC of Order and Notice Service Date 12/05/2010. (Admin.) (Entered: 12/06/2010) |
| 12/08/2010 | 11 (1 pg) | Credit Counseling Service Certificate filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (Taylor, Dorna) |

| | | |
|---|---|---|
| 12/15/2010 | **12**<br>(2 pgs) | Request for addition to list of creditors and request for notices filed by John D. Schlotter on behalf of Wachovia Mortgage, FSB. (Schlotter, John) |
| 12/29/2010 | **13**<br>(3 pgs) | Notice of Appearance (Attorney) *and Request for Notices* filed by Wendy Wolfenbarger Kraby on behalf of Providence Bank. (Kraby, Wendy) |
| 01/03/2011 | **14**<br>(3 pgs) | Amendment to Voluntary Petition to Correct disclosure of prior case filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (related document(s)**1** Initial Docs01: Voluntary Petition (Chapter 11))(Taylor, Dorna) |
| 01/03/2011 | **15**<br>(15 pgs) | Statement of Financial Affairs, Attorney Disclosure Statement , Schedule I , Schedule J , Debtor's Statement of Currently Monthly Income , Debtor(s) Payment Advices *(statement regarding self employment)* filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (related document(s)**1** Initial Docs01: Voluntary Petition (Chapter 11), **3** Notice of deficient filing regarding bankruptcy petition.)(Taylor, Dorna) |
| 01/03/2011 | **16**<br>(3 pgs) | Amended Schedule A *to list occupancy of rental properties*, Amended Schedule H *to list co debtor on loan* filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (related document(s)**1** Initial Docs01: Voluntary Petition (Chapter 11))(Taylor, Dorna) |
| 01/03/2011 | **17**<br>(6 pgs) | Schedule B , Schedule C , Statistical Summary of Certain Liabilities, Summary of Schedules filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (related document(s)**1** Initial Docs01: Voluntary Petition (Chapter 11))(Taylor, Dorna) |
| 01/04/2011 | | Section 341(a) meeting held and concluded. (klc) (Entered: 01/14/2011) |
| 01/06/2011 | **18**<br>(2 pgs) | Request for addition to list of creditors and request for notices filed by Dean R. Prober Esq. on behalf of BAC Home Loans Servicing, LP, et al. (Prober, Dean) |
| 01/06/2011 | **19**<br>(37 pgs) | Notice of Security Interest in Rents and Profits filed by Dean R. Prober Esq. on behalf of BAC Home Loans Servicing, LP, c/o Prober & Raphael, A Law Corporation. (Prober, Dean) |
| 01/07/2011 | **20**<br>(1 pg) | Debtor(s) Payment Advices *(statement regarding self employment)* filed by Dorna Jenkins Taylor on behalf of Eva |

| | | |
|---|---|---|
| | | Anderson. (related document(s)1 Initial Docs01: Voluntary Petition (Chapter 11), 3 Notice of deficient filing regarding bankruptcy petition.)(Taylor, Dorna) |
| 01/07/2011 | 21 (10 pgs) | Certificate of Service , Amended Statement of Financial Affairs*to amend Question 1, 3 and 18*, Amended Schedule I *to update length of debtor's employment* filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (related document(s)15 Statement of Financial Affairs, Attorney Disclosure Statement, Schedule I - Current Income of Individual Debtor(s), Schedule J - Current Expenditures, Statement of Current Monthly Income - Ch. 11, Payment Advices)(Taylor, Dorna) |
| 01/14/2011 | 22 (1 pg) | Order and Notice Of Reset Status Conference. Service by BNC. Entered on 1/14/2011. Hearing to be held on 1/31/2011 at 11:45 AM in Courtroom 1204, Atlanta, (mbr) |
| 01/18/2011 | 23 (1 pg) | Notice of deficient filing re: Missing Certificate of Service . Service by BNC. (related document(s)16 Schedule A - Real Property filed by Eva Anderson, Schedule H - CoDebtors) (mbr) |
| 01/20/2011 | 24 (2 pgs) | Certificate of Mailing by BNC of Notice of Deficiency Service Date 01/20/2011. (Admin.) (Entered: 01/21/2011) |
| 01/30/2011 | 25 (9 pgs) | Application to Employ Dorna Jenkins Taylor as Attorney for Debtor in Possession filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (Taylor, Dorna) |
| 01/31/2011 | 26 (45 pgs) | Motion to Approve Use of Cash Collateral filed by Dorna Jenkins Taylor on behalf of Eva Anderson. (Taylor, Dorna) |
| 02/01/2011 | | The United States Trustee for Region 21 reports that no committee of creditors holding unsecured claims has been appointed in this case. Filed by James H. Morawetz on behalf of Office of the United States Trustee. (Morawetz, James) |
| 02/02/2011 | 27 (4 pgs) | Motion to Dismiss Case , Motion to convert/reconvert case from 11 to 7 Fee $ 15,, Motion to Appoint Trustee filed by James H. Morawetz on behalf of Office of the United States Trustee. (Morawetz, James) |
| 02/03/2011 | 28 (1 pg) | Order and Notice Regarding Deficient Filing. If no further pleadings are filed to correct the noted deficiency within 21 days from the date of entry of this order, the Motion shall |

|  |  | stand denied. Service by BNC. Entered on 2/3/2011. (related document(s)26 Motion to Approve Use of Cash Collateral filed by Eva Anderson)(mbr) |
| 02/03/2011 | 29 (1 pg) | Order and Notice Of Hearing. Service by BNC. Entered on 2/3/2011. Hearing to be held on 2/28/2011 at 02:45 PM in Courtroom 1204, Atlanta, (related document(s)27 Motion to Dismiss Case filed by Office of the United States Trustee)(mbr) |
| 02/05/2011 | 30 (2 pgs) | Certificate of Mailing by BNC of Order and Notice Service Date 02/05/2011. (Admin.) (Entered: 02/06/2011) |
| 02/05/2011 | 31 (3 pgs) | Certificate of Mailing by BNC of Order and Notice Service Date 02/05/2011. (Admin.) (Entered: 02/06/2011) |
| 03/02/2011 | 32 (2 pgs) | Order Dismissing Case. Service by BNC Entered on 3/2/2011. (mbr) |
| 03/04/2011 | 33 (4 pgs) | Certificate of Mailing by BNC of Order of Dismissal Service Date 03/04/2011. (Admin.) (Entered: 03/05/2011) |
| 03/21/2011 |  | Case Closed (mbr) |

| **PACER Service Center** | | |
| **Transaction Receipt** | | |
| 10/23/2018 16:56:45 | | |
| **PACER Login:** | mglaw5120:3934026:0 | **Client Code:** | Jeremy |
| **Description:** | Docket Report | **Search Criteria:** | 10-95455-mhm Fil or Ent: filed To: 10/23/2018 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

# EXHIBIT "9"




**This page is part of your document - DO NOT DISCARD**



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/19/12 AT 10:00AM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |

**PCOR SURCHARGE $20.00**





L E A D S H E E T



**SEQ:**
**01**

DAR - Counter (Upfront Scan)





**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By:

When recorded mail document to
NAME **Eva Anderson**
ADDRESS **1932 Rochester**
CITY **Circle, Los Angeles**
STATE & ZIP **CA 90018**

Above Space for Recorder's Use Only

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $ **This is a bonafide gift and the grantor received**
**nothing in return, R & T 11911.**

CITY TAX $ _____

☐ computed on full value of property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area ☐ City of _____ , and

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**EVA ANDERSON, an unmarried woman**

hereby GRANT(s) to **EDMUND LINCOLN ANDERSON, an unmarried**
**man, undivided of One Third (¹/₃) interest as tenants in common.**

the following described real property in the City of **Los Angeles** County

of **Los Angeles**, State of California: **Lot 444 of supplemental map of**
**Hyde Park, in the City of Los Angeles, County of Los Angeles, State of California,**
**(Address: 0520-272 Brynhurst Ave. Los Angeles, CA 90043)**
**of the County Recorder of said County.**

APN No. _____

**EVA ANDERSON**

Dated: **7/4/12**

STATE OF CALIFORNIA
COUNTY OF **LOS ANGELES** } SS.

On **July 4th 2012** before me, **HARDIK SHAH** _____ a Notary Public, personally
appeared **EVA ANDERSON** _____ who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity (ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

(SEAL)

WITNESS my hand and official seal.

Signature **H. D. Shah**

X _____

MAIL TAX STATEMENTS TO ADDRESS AS SHOWN ABOVE

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles    } SS

On  December 19, 2012  before me, _____ JESSICA M. GARCIA _____ , a Notary Public,

personally appeared ********************************* EVA ANDERSON ************************

********************************************************************************************

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

NOTARY SEAL BELOW

JESSICA M. GARCIA
Commission # 1991578
Notary Public - California
Los Angeles County
My Comm. Expires Oct 16, 2016

---

**OPTIONAL**

*Though the information is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document:  **Grant Deed**

Document Date:  July 4, 2012 _____ Number of Pages: One

Signer(s) Other Than Named Above: None

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: EVA ANDERSON | Signer's Name: |
|---|---|
| ☑ Individual | ☐ Individual |
| ☐ Corporate Officer-Title(s): | ☐ Corporate Officer-Title(s): |
| ☐ Partner- ☐ Limited ☐ General | ☐ Partner- ☐ Limited ☐ General |
| ☐ Attorney in Fact    **Right Thumbprint of Signer** | ☐ Attorney in Fact    **Right Thumbprint of Signer** |
| ☐ Trustee    **Top of Thumb Here** | ☐ Trustee    **Top of Thumb Here** |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: | ☐ Other: |

Signer is Representing:
SELF

Signer is Representing:

# EXHIBIT "10"

 

**This page is part of your document - DO NOT DISCARD**



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/24/13 AT 10:54AM**

|  |  |
|---|---|
| FEES: | 19.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 19.00 |





LEADSHEET





SEQ:
01

DAR - Counter (Upfront Scan)



THIS FORM IS NOT TO BE DUPLICATED



Recording requested by (name):

Eva Anderson

And when recorded, mail this deed and tax
statements to (name and address):

1932 Rochester Circle

Los Angeles, CA 90018

# GRANT DEED

APN:

DOCUMENTARY TRANSFER TAX $   0
EXEMPTION (R&T CODE)
EXPLANATION _bonafide gift_

_Eva Anderson_
Signature of Declarant or Agent determining tax

For a valuable consideration, receipt of which is hereby acknowledged,

Eva Anderson, a Single Woman
(Current Owner(s), including form of title)

hereby grant(s) to Cara Eldridge, a Single Woman, Undivided of 5% Interest
(New Owner(s))

as Tenants in Common
(An Unmarried Person / Joint Tenants / Tenants in Common / Community Property / Community Property with Right of Survivorship / etc.)

the following real property in the City of Los Angeles _____, County of

Los Angeles _____, California: (insert legal description)

Lot (s) 444 in Supplemental Map of the Hyde Park tract , in the city of Los Angeles, county Los Angeles,
state of California, as per map recorded in book 34 page (s) 9 of maps, in the office of the County Recorder
of said county.
Address: 6520 S Brynhurst Avenue, Los Angeles, CA 90043

Date: July 24, 2013                    _Eva Anderson_
                                       (Signature of declarant)
                                       EVA ANDERSON
                                       (Typed or written name of declarant)

Date: _____

_____
(Signature of declarant)

_____
(Typed or written name of declarant)

State of California
County of Los Angeles

**NOTARY SEAL**

On July 24, 2013, before me,
Jessica M Garcia, a notary public, personally appeared
Eva Anderson, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of
the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary

JESSICA M. GARCIA
Commission # 1991978
Notary Public - California
Los Angeles County
My Comm. Expires Oct 16, 2016

# EXHIBIT "11"

 This page is part of your document - **DO NOT DISCARD** 



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/15/15 AT 11:07AM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 56.00 |
| OTHER: | 0.00 |
| PAID: | 81.00 |





LEADSHEET





SEQ:
02

DAR - Counter (Upfront Scan)





**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:

WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENT TO:

Name: Edmund Anderson
Street: 1932 Rochester Circle
Address: Los Angeles Ca 90018

City
State
& Zip

Title Order No.:    Escrow No.:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Grant Deed

The undersigned Grantor(s) declare(s)    $45    COUNTY $11
DOCUMENTARY TRANSFER TAX IS $ CITY TAX TRANSFER TAX
☐ Computed on Full Value of the interest or property conveyed, or
☑ Computed on full value less value of liens or encumbrances remaining at time of sale,
☐ Unincorporated Area    City of Los Angeles
Parcel No.:

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Eva Anderson a single woman

Hereby GRANT(s) to:

Edmund Anderson a single man his sole and seperate property

The following described real property in the County of Los Angeles    , State of California

6520 Brynhurst Ave./Los Angeles,Ca 90048. Legal Description/LOT(S) 444 in Supplemental map
Of the Hyde Park tract,in the city of Los angeles,County of Los Angeles, State of California,as per
map recorded in Book 34 page(s) 9 of maps, in the office of the county recorder of said county

Dated: 10/13/15

STATE OF CALIFORNIA
COUNTY OF Los Angeles

On Oct 13, 2015    before me Beverly
Lee Wells    Notary Public, personally
appeared    EVA ANDERSON

Eva Anderson
EVA ANDERSON

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf
of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Beverly Lee Wells

BEVERLY LEE WELLS
Commission # 2075303
Notary Public - California
Los Angeles County
My Comm. Expires Jul 20, 2018

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE: IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

Name    Street Address    City & State

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _Oct 13, 2015_ before me, _BEVERLY LEE WELLS, Notary Public_
Date · Here Insert Name and Title of the Officer

personally appeared _EVA Anderson_
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> BEVERLY LEE WELLS
> Commission # 2075303
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jul 20, 2018

Signature _Beverly Lee Wells_
Signature of Notary Public

Place Notary Seal Above

──────────── OPTIONAL ────────────

Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

Description of Attached Document

Title or Type of Document: _Grant Deed_   Document Date: _10/13/15_
Number of Pages: _1_   Signer(s) Other Than Named Above: ___

Capacity(ies) Claimed by Signer(s)
Signer's Name: _EVA Anderson_
☐ Corporate Officer — Title(s): ___
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ___
Signer Is Representing: _Self_

Signer's Name: ___
☐ Corporate Officer — Title(s): ___
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ___
Signer Is Representing: ___

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)  Item #5907